UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FRATUS, | No. 2:20-cv-0354 DB P |
| Plaintiff, | |
| v. | ORDER |
| DAYSON, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was suffered side effects from psychiatric medication and was denied medical treatment. Presently before the court is plaintiff's motion to proceed in forma pauperis (ECF No. 6), motion for an extension of time (ECF No. 8), motion to locate legal mail (ECF No. 9), motion for sanctions (ECF No. 10), and his complaint for screening (ECF No. 1). For the reasons set forth below, the court will deny the motions to proceed in forma pauperis, for extension of time, legal mail, and sanctions, and give plaintiff the opportunity to proceed with the complaint as screened or file an amended complaint.

**IN FORMA PAUPERIS**

Plaintiff has filed an in forma pauperis affidavit in which he states that he has approximately $25,000.00 in his prison trust account. (ECF No. 6.) The amount of plaintiff's funds shows that plaintiff is able to pay the filing fee and costs. Thus, plaintiff has made an

1

inadequate showing of indigency.  See Olivares v. Marshall, 59 F.3d 109, 112 (9th Cir. 1995); Alexander v. Carson Adult High Sch., 9 F.3d 1448, 1449 (9th Cir. 1993).  Additionally, court records reflect that plaintiff has paid the filing fee in full.  Therefore, the court will deny plaintiff's motion to proceed in forma pauperis as moot.

**SCREENING**

**I.    Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

////

738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Here, the defendants must act under color of federal law. Bivens, 403 U.S. at 389. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II.     Allegations in the Complaint**

Plaintiff claims the events giving rise to the claim occurred while he was incarcerated at California Medical Facility (CMF). (ECF No. 1 at 1.) Plaintiff names the following individuals as defendants: (1) Medical Technical Assistant (MTA) Dayson; (2) MTA Vallar; (3) MTA Houston; (4) Dr. John Doe; (5) Dr. Jane Doe; and (6) Dr. John Doe[1]. (Id. at 2-3.)

---

[1] Plaintiff appears to designate two separate defendants as "John Doe, Doctor at CMF." As discussed below in any amended complaint plaintiff shall properly designate multiple John Doe

3

1    Plaintiff was housed at California State Prison, Sacramento (CSP-SAC) on June 8, 2018.
2  He reported that he was suicidal and was placed on suicide watch. (Id. at 4.) After plaintiff cut
3  his wrists and went on a hunger strike, he was moved to a Mental Health Crisis Bed (MHCB) on
4  June 11, 2016. Plaintiff remained in the MHCB until he was transferred to an acute care facility
5  at CMF on July 22, 2016.

6    Plaintiff alleges that while at CMF he was kept in his cell for twenty-four hours a day. On
7  August 19, 2016, he told a senior MTA he felt suicidal. Plaintiff was stripped down, given a
8  safety suicide gown, and placed on suicide precaution. (Id. at 6.) Around 3:00 a.m. on August
9  21, 2016, plaintiff cut his left wrist because he felt suicidal and depressed. Plaintiff was taken out
10  of his cell at 4:30 a.m. to talk to Dr. Jane Doe. He talked to Dr. Jane Doe for roughly fifteen
11  minutes where he explained that he cut his wrist because he was suicidal and depressed.

12    At the end of the talk, plaintiff was informed that he would receive three injections of
13  Thorazine and Benadryl. (Id.) Plaintiff requested to take the medications orally. (Id. at 7.) He
14  also felt that Thorazine was not the appropriate medication for his symptoms. Plaintiff was given
15  three injections and immediately slumped forward and felt "extremely 'drugged up.'"

16    Plaintiff was returned to his cell at 5:00 a.m. where he slept until 11:00 a.m. (Id. at 8.) He
17  alleges that when he got up to urinate he "noticed he had a 'strange' erection." He went back to
18  sleep and woke up at 4:30 p.m. for dinner. He still had an erection that would not go away and
19  was becoming painful. Around 5:00 p.m., he got up to get some water, he had a seizure, and
20  passed out. (Id. at 8-9.) MTAs Dayson and Houston came to plaintiff's cell collecting dinner
21  trays and plaintiff told them he was suffering from several side effects from the Thorazine
22  injection, including an erection lasting for at least seven hours. He alleges Houston smirked and
23  Dayson "laugh[ed] at plaintiff in a mean way." (Id. at 10.)

24    Plaintiff told MTA Vallar at 8:00 p.m. that he was still suffering from side effects. Vallar
25  asked to observe plaintiff's condition and plaintiff complied. Vallar told plaintiff he would get a
26  nurse and walked away. Plaintiff later asked an unidentified MTA for assistance and told her he

28  defendants so that the court knows which defendant is alleged to have committed which actions.

4

was having a medical emergency. She told plaintiff she would tell a nurse and walked away. At 8:00 a.m. on August 22, 2016 plaintiff explained to the nurse passing out morning medication that he been experiencing a painful and persistent erection for almost twenty-four hours. (Id. at 11.) The nurse took plaintiff to the infirmary where they attempted to drain his penis. The treatment was not effective, and plaintiff was transported to a local hospital. (Id. at 12.)

At the hospital medical officials continued to try and drain plaintiff's penis. A urologist told plaintiff he may need to have surgery, before trying to drain it one final time. This attempt at treatment was effective, but plaintiff's priapism returned. Plaintiff was transported to San Joaquin General Hospital around 11:00 p.m.

He was seen by a second urologist who successfully treated plaintiff's priapism. (Id. at 13.) He was discharged from the hospital and back to CMF on August 24, 2016. Before his discharge a doctor told him he could lose his ability to get erections.

When plaintiff returned to CMF he met with the Interdisciplinary Treatment Team. He told them he was still suicidal and depressed. Even though plaintiff expressed his mental health issues to the team, he was sent back to CSP-SAC. Plaintiff has continued to experience side effects due to the prolonged priapism. (Id. at 16.)

**III.   Does Plaintiff State a Claim under § 1983?**

**A. Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

Where a prisoner's Eighth Amendment claim arises in the context of medical care, including mental health care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.

An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prisoner officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not

give rise to a § 1983 claim.  See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### 1. Medical Care

Plaintiff has alleged that he informed defendants Dayson, Houston, and Vallar that he was experiencing side effects from the Thorazine injection and they failed to assist plaintiff in receiving medical treatment.  Additionally, plaintiff was harmed by the delay as he has suffered permanent damage as a result.  Such allegations are sufficient to state an Eighth Amendment claim against these defendants.

### 2. Conditions of Confinement

Plaintiff claims Dr. John Doe denied his right to adequate mental health treatment because he was not allowed time out of his cell.  (Id. at 17.)  The Ninth Circuit has held that exercise is "one of the basic human necessities protected by the Eighth Amendment," LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993), and that some form of regular exercise, "is extremely important to the psychological and physical well-being" of prisoners.  Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979).  While the Ninth Circuit has not specified the "minimum amount of weekly exercise that must be afforded to detainees who spend the bulk of their time inside their cells," the court held that ninety minutes per week of exercise, which is the equivalent of slightly less than thirteen minutes a day, does not comport with Eighth Amendment standards.  Pierce v. County of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008).

Plaintiff's allegation that he was denied out of cell time from July 22, 2016 to August 29, 2016 could state a potentially cognizable Eighth Amendment conditions of confinement claim.  However, plaintiff appears to identify two separate individuals as Dr. John Doe.  While Doe defendants are not prohibited, "John Doe" defendant liability must be properly alleged.  Plaintiff may use "Doe" designations to refer to defendants whose names are unknown; however, he must number them in the complaint, e.g., "John Doe 1," "John Doe 2," so that each numbered John Doe refers to a specific person.  If plaintiff chooses to file an amended complaint he shall either name the defendants involved or list the Doe defendants involved and describe what each did to

violate his rights. If plaintiff can only list these defendants as John Doe, plaintiff should allege specific acts that each Doe defendant did, such as "John Doe 1 did X" and "John Doe 2 did Y." Alexander v. Tilton, No. 1:07-cv-0759 LJO DLB, 2009 WL 464486, *5 (E.D. Cal. Feb. 24, 2009).

While plaintiff has alleged facts that could support a cognizable Eighth Amendment claim, he has failed to properly identify a defendant who caused this rights violation. Accordingly, this claim will be dismissed with leave to amend.

### 3. Due Process

#### a. Procedural Due Process

"The extent of a prisoner's right under the [Due Process] Clause to avoid the unwanted administration of antipsychotic drugs must be defined in the context of the inmate's confinement." Washington v. Harper, 494 U.S. 210, 222 (1990). "[G]iven the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interests." Id. at 227. In the context of involuntary medication, the court considers three of the factors used to determine the reasonableness of a prison policy particularly relevant: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest;" (2) the impact on the guards and other inmates when the asserted constitutional right is accommodated; and (3) "the absence of ready alternatives." United States v. Loughner, 672 F.3d 731, 745 (9th Cir. 2012) (internal quotation marks omitted) (quoting Harper, 494 U.S. at 224-25).

Plaintiff has alleged that he was willing to take oral medications, thus he has established a readily available and less extreme alternative. Accordingly, the court finds that such allegations are sufficient at the screening stage to state a claim against Dr. Jane Doe for violation of plaintiff's rights under the Fourteenth Amendment.

The use of Does in pleading practice is generally disfavored—but it is not prohibited. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999); Lopes v. Viera, 543 F.Supp.2d 1149, 1152 (E.D. Cal. 2008). However,

plaintiff is advised that the court cannot order service of a Doe defendant because the United States Marshal cannot serve a Doe defendant.

Therefore, plaintiff will be required to identify him or her with enough information to locate the defendant for service of process. The United States Marshal cannot initiate service of process on unknown defendants. Plaintiff will have an opportunity through discovery to identify the unknown (Doe) defendants. Crowley v. Bannister, 734 F.3d 967, 978 (9th Cir. 2013) (quoting Gillespie, 629 F.2d at 642). Once the identity of a Doe defendant is ascertained, plaintiff must file a motion to amend his complaint only to identify the identified Doe defendant so that service by the United States Marshal can be attempted. However, the court will recommend that any Doe defendant plaintiff fails to identify during the course of discovery be dismissed from this action.

### b. Substantive Due Process

Although the Supreme Court has not set out the minimum procedural safeguards necessary for involuntary medication, the court has found procedures to be adequate when a prisoner is provided with "notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses." Harper, 494 U.S. at 235 (citing Vitek v. Jones, 445 U.S. 480, 494-96 (1980)). The complaint does not contain any facts indicating whether or not a hearing was held before plaintiff was medicated. Additionally, plaintiff has not alleged that his due process rights were violated as a result of his involuntary medication. Therefore, the court finds that the complaint fails to state a claim for violation of plaintiff's procedural due process rights.

## AMENDING THE COMPLAINT

Should plaintiff choose to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo, 423 U.S. at 370-71. Also, the complaint must allege in specific terms how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's action and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740,

9

743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey, 673 F.2d at 268.

Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant. If plaintiff wishes to add a claim, he must include it in the body of the complaint. The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P 10(b). The amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson, 588 F.2d at 743 (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely, and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

Plaintiff is informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, all

1  prior pleadings are superseded.  Therefore, in an amended complaint, as in an original complaint,
2  each claim and the involvement of each defendant must be sufficiently alleged.
3      By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and
4  has evidentiary support for his allegations, and for violation of this rule the court may impose
5  sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

6  **MOTION FOR EXTENSION OF TIME**

7      Plaintiff has requested an extension of time to file "any and all current deadlines that may
8  be applicable . . . to this action." (ECF No. 8 at 1.)  He claims legal mail was brought to his cell
9  on July 14, 2020, but he was not there to sign for it because he was "out to court" on an unrelated
10 criminal matter.  (Id. at 2.)  When plaintiff inquired about the mail, he was told there was no mail
11 on hold for him.  He further alleges that the mail log indicates that mail was received from the
12 United States District Court for the Eastern District on July 13, 2020, but he never received it.
13     Plaintiff is informed that court records indicate that plaintiff sent a request for status that
14 was received by the court on July 8, 2020.  A response was sent from the court on July 10, 2020
15 containing the following message, "The court will notify you as soon as any action is taken in
16 your case."  (See ECF No. 7.)  Because there were no pending deadlines in this action at the time
17 of plaintiff's filing the court will deny the motion as moot.

18 **MOTION FOR LEGAL MAIL**

19     Plaintiff moves for an order directing the CSP-SAC to locate and give plaintiff his legal
20 mail from July 13, 2020. (ECF No. 9.)  As discussed above, it appears the mail plaintiff is
21 referring to is the response from the court sent on July 10, 2020.  Court records indicate that
22 plaintiff requested and was sent a copy of the docket sheet in this action.  (ECF No. 12.)  Because
23 the docket sheet includes the response contained in the legal mail plaintiff is requesting be located
24 and given to him, the court will deny his motion as moot.

25 **MOTION FOR SANCTIONS**

26     Plaintiff requests the court impose sanctions in the amount of $500.00 on the defendants
27 because their "'co-conspirators' CDCR CSP-SAC" are intentionally obstructing plaintiff from
28 litigating this action.  (ECF No. 10.)  Plaintiff argues that sanctions are appropriate to "send a

11

message to defendants and their co-conspirators "that this will not be tolerated in the future." (Id. at 1-2.)

The court has the inherent power to "levy sanctions in response to abusive litigation practices." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 765 (1980). In the Ninth Circuit, sanctions are appropriate only in "extreme circumstances and where the violation is "due to willfulness, bad faith, or fault of the party." Fair Housing of Marin v. Combs, 285 F.3d 899, 905 (9th Cir 2002) (quoting United States v. Kahaluu Constr. Co., Inc., 857 F.2d 600, 603 (9th Cir. 1988) (citations omitted)). Plaintiff seeks sanctions against defendants, who are CMF employees, based on the alleged actions of individuals employed at CSP-SAC. It is inappropriate for the court to sanction defendants based on the actions of individuals who are not parties in this action. Accordingly, the court will deny the motion for sanctions.

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for leave to proceed in forma pauperis (ECF No. 6) is denied as moot.
2. Plaintiff's motion for an extension of time (ECF No. 8) is denied as moot.
3. Plaintiff's motion for legal mail (ECF No. 9) is denied as moot.
4. Plaintiff's motion for sanctions (ECF No. 10) is denied.
5. Plaintiff's complaint states a potentially cognizable Eighth Amendment claim against defendants Dayson, Houston, and Vallar and Fourteenth Amendment claim against Dr. Jane Doe as set forth in Section III above. The complaint does not state any additional claims. Accordingly, plaintiff will have the option of proceeding with the complaint as screened or filing an amended complaint.
6. Within sixty (60) days of the date of this order, plaintiff shall fill out and return the attached form indicating how he would like to proceed in this action.

////

////

////

7. Plaintiff is warned that his failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: September 3, 2020

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB:1/Orders/Prisoner/Civil.Rights/frat0354.scrn

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FRATUS,<br><br>          Plaintiff,<br><br>   v.<br><br>DAYSON, et al.,<br><br>          Defendants. | No.  2:20-cv-0354 DB P<br><br>PLAINTIFF'S NOTICE ON HOW TO PROCEED |

Check one:

\_\_\_\_\_    Plaintiff wants to proceed immediately on his Eighth Amendment claims against defendants Dayson, Houston, and Vallar, and his Fourteenth Amendment Claim against Dr. Jane Doe.  Plaintiff understands that by going forward without amending the complaint he is voluntarily dismissing all other claims.

\_\_\_\_\_    Plaintiff wants to amend the complaint.

DATED:_____

                                                  John Fratus
                                                  Plaintiff pro se