.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN FRATUS,

Plaintiff,

v.

DAYSON, et al.,

Defendants.

No. 2:20-cv-0354 DB P

ORDER

Plaintiff, a state prisoner proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was suffered side effects from psychiatric medication and was denied medical treatment. Presently before the court is plaintiff's amended complaint for screening. (ECF No. 16.) For the reasons set forth below, the court will give plaintiff the option to proceed with the complaint as screened or file an amended complaint.

## SCREENING

### I. Legal Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Here, the defendants must act under color of federal law. Bivens, 403 U.S. at 389. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

////

omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

## II. Allegations in the Amended Complaint

Plaintiff claims the events giving rise to the claim occurred while he was incarcerated at California Medical Facility ("CMF"). (ECF No. 16 at 1.) Plaintiff names the following individuals as defendants: (1) Medical Technical Assistant ("MTA") Dayson; (2) Vallar, MTA at CMF Department of State Hospitals ("DSH") Psychiatric Inpatient Program ("PIP"); (3) Houston, MTA at CMF DSH PIP; (4) Dr. Siegel, psychiatrist at CMF; (5) B. Rodgers, Program Director at CMF DSH PIP; (6) Jared Lozano, Warden at CMF; (7) D. Hurley, Associate Warden at CMF; (8) Dr. Jane Doe; (9) John Doe, Director of Corrections for California Department of Corrections and Rehabilitation ("CDCR"). (Id. at 2-3.)

Plaintiff was housed at California State Prison, Sacramento (CSP-SAC) on June 8, 2018. (Id. at 3.) He reported that he was suicidal and was placed on suicide watch. After plaintiff cut his wrists and went on a hunger strike, he was moved to a Mental Health Crisis Bed (MHCB) on June 11, 2016. (Id. at 4.) Plaintiff remained in the MHCB until he was transferred to CMF's PIP Acute Care Program on July 22, 2016. Plaintiff remained at CMF PIP until August 29, 2016.

Plaintiff alleges that while he was at CMF he was held in a small cell for twenty-four hours a day. Plaintiff alleges that the only treatment he received was when he was removed from his cell to talk to Dr. Siegel and his treatment team for approximately ten minutes once a week.

Plaintiff alleges that before he was transferred to CMF he was in the Enhanced Outpatient Program ("EOP") level of care. He further states that "[p]ursuant to the Coleman class action

lawsuit regarding mental health care in California prisons it is mandatory by law that all EOP inmates receive a minimum of 10 hours a week out of cell therapeutic activities and groups regardless of [the] inmate's custody classification status." (Id. at 5.)

Plaintiff argues that because he was in a PIP he required even more mental health treatment. He concludes that he should have received more out of cell treatment. He submitted a grievance, Rodgers responded that plaintiff's advancement through the program had been delayed based on incidents that occurred while plaintiff was in his cell. (Id. at 5-6.) Plaintiff alleges that his "mental illness was used . . . to justify [the imposition of] harsher conditions of confinement." (Id. at 7.) Plaintiff alleges defendants Lozano, Hurley, Rodgers, and Siegel are responsible for "implementing and following a policy that is highly illegal." (Id. at 7.)

Plaintiff told a "Senior MTA" he felt suicidal on August 19, 2016. (Id. at 8.) He was put into a "safety suicide gown," and placed on suicide watch. On August 21, 2016, around 3:00 a.m. plaintiff cut his left wrist. He was pulled from his cell at approximately 4:30 a.m. to talk to Dr. Jane Doe. Plaintiff states he spoke to Dr. Jane Doe for fifteen minutes or less. At the end of their talk, the doctor informed plaintiff he would be receiving three injections of Thorazine and Benadryl. Plaintiff pleaded with the doctor to avoid the injections, expressing his willingness to take the prescribed medication orally. (Id. at 9.) Plaintiff further told the doctor that he did not believe the Thorazine was appropriate because his main symptom was depression.

Plaintiff received three injections and immediately slumped forward and said, "whoa am I gonna die? I feel like I'm gonna die." (Id.) Thereafter, plaintiff was returned to his cell. He alleges he was too high to eat his breakfast. (Id. at 10.) Plaintiff slept until 11:00 a.m. When he got up to urinate he noticed he had a "'strange' erection." Plaintiff was still feeling the effects of the medication and went back to sleep.

Plaintiff was awoken again at 4:30 p.m. for dinner. Plaintiff still had an erection. He further states that he got up to get water and "began to have a seizure or passed out." Dayson and Houston came to plaintiff's cell collecting dinner trays. (Id. at 11.) Plaintiff told them he was experiencing side effects from the injections and told them he had had an erection for at least

////

seven hours that was painful and would not subside. Upon hearing this, Houston smirked and Dayson began laughing at plaintiff "in a mean way."

Around 8:00 p.m. MTA Vallar came to plaintiff's cell. Plaintiff told Vallar that he was experiencing side effects, including his persistent erection. Vallar asked to see the erection, plaintiff complied, and Vallar told plaintiff he would tell the R.N. Plaintiff went back to sleep.

Plaintiff woke up at 1:00 a.m. and informed an unnamed MTA that he was experiencing side effects. (Id. at 12.) The MTA told plaintiff she would tell the R.N. Plaintiff woke up the following morning still suffering. He told the nurse that he was experiencing side effects from the injection. She brought plaintiff to the infirmary for treatment. After the treatment received at the facility did not resolve the issue, plaintiff was transferred to Vaca Valley hospital. Plaintiff was seen by a urologist who was successful in treating plaintiff's priapism. (Id. at 13.) However, his erection returned, and plaintiff was taken to San Joaquin General Hospital. He was seen by a second urologist. His condition was resolved, and plaintiff was discharged back to CMF. (Id. at 13-14.)

Several days later plaintiff was returned to CSP-SAC. Plaintiff has suffered several side effects from the prolonged priapism. He was seen by a urologist in September 2016 and told that his condition could be resolved by surgery. Plaintiff states that at this point he has mostly recovered, but still suffers from priapism while he is sleeping and some disfigurement. (Id. at 15.)

**III. Does Plaintiff State a § 1983 Claim?**

At the outset, the court notes that plaintiff has alleged two separate violations based on similar allegations. (See ECF No. 16 at 17, 21-22.) Both violations are based on prison officials' requirement that plaintiff remain confined to his cell for twenty-four hours a day from July 22, 2016 to August 29, 2016 and from July 16, 2018 to August 31, 2018. It appears that plaintiff is alleging in his first claim is that keeping him in his cell all day did "not constitute mental health treatment." The court construes the first claim as a failure to provide adequate mental health care claim and the second as a conditions of confinement claim.

////

**A. Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

Where a prisoner's Eighth Amendment claim arises in the context of medical care, including mental health care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prisoner officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**1. Lack of Outdoor Exercise**

Plaintiff alleges defendants Dr. Siegel, Rodgers, Hurley, and Lozano failed to provide adequate mental health treatment while he was housed at CMF. (ECF No. 16 at 17.) Because the nature of plaintiff's claim is not clear, the court cannot determine whether the allegations in the amended complaint state a cognizable claim. Plaintiff may be able to state a claim based on an allegation that his mental health care was not properly treated at CMF. However, he has not alleged sufficient facts to state a cognizable claim. In any amended complaint, plaintiff should state specific facts showing how the mental health care received at CMF amounted to deliberate indifference and clearly identify those responsible for his mental health treatment.

**2. Dr. Jane Doe's Administration of Injection**

Plaintiff alleges Dr. Jane Doe violated his Eighth Amendment rights by giving him an injection of Thorazine and Benadryl. (ECF No. 16 at 18.) He alleges the injection was given against his will, was not the correct medication to treat his condition, and caused him to suffer serious side effects.

Plaintiff's allegations fail to show an Eighth Amendment violation. At most plaintiff's allegation that he should not have received Thorazine shows a misdiagnosis or disagreement with the diagnosis which is not sufficient to state a cognizable claim. See Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (A misdiagnosis does not state a cognizable claim for deliberate indifference.); Sanchez, 891 F.2d at 242 (An inmate's disagreement with diagnosis or treatment does not support a claim of deliberate indifference.). Plaintiff's allegation that he suffered side effects is also insufficient to state a claim.

**3. Denial of Medical Treatment**

Plaintiff alleges MTAs Dayson, Houston, and Vallar ignored plaintiff's requests for medical treatment. (ECF No. 16 at 19-21.) He further claims that as a result of their actions he remained in pain and the delay resulted in severe damage. The court finds such allegations sufficient to state a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment.

**4. Conditions of Confinement**

Plaintiff states that Dr. Siegel violated his rights to humane conditions of confinement by keeping him confined to his cell for twenty-four hours a day from July 22, 2016 to August 29, 2016 and from July 16, 2018 to August 31, 2018. (ECF No. 16 at 21-22.) He further alleges that Warden Lozano, Associate Warden Hurley, and Program Director Rodgers were responsible for that policy. (Id. at 17.)

The Ninth Circuit has held that exercise is "one of the basic human necessities protected by the Eighth Amendment," LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993), and that some form of regular exercise, "is extremely important to the psychological and physical well-being" of prisoners. Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). While the Ninth Circuit has not specified the "minimum amount of weekly exercise that must be afforded to detainees who spend the bulk of their time inside their cells," the court held that ninety minutes per week of exercise, which is the equivalent of slightly less than thirteen minutes a day, does not comport with Eighth Amendment standards. Pierce v. County of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008).

Plaintiff's allegation that he was denied out of cell exercise for more than thirty days on two separate occasions is sufficient to state a cognizable Eighth Amendment claim. Liberally construed plaintiff has identified a policy that Maximum Custody inmates at CMF PIP were not permitted recreational yard activities. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) ("A prisoner can state a section 1983 claim against prison personnel under the eighth amendment by establishing that the prison personnel acted with 'deliberate indifference' in creating the condition that violates the eight amendment.") (citing Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986)). Accordingly, the court finds that plaintiff's complaint has stated sufficient facts to state a claim for violation of his Eighth Amendment rights against defendants Siegel, Rodgers, Hurley, and Lozano.

**B. Due Process**

Plaintiff alleges Dr. Jane Doe violated his rights by giving him an injection of Thorazine after he expressed a willingness to take the medication orally. (ECF No. 16 at 19.)

**1. Procedural Due Process**

"The extent of a prisoner's right under the [Due Process] Clause to avoid the unwanted administration of antipsychotic drugs must be defined in the context of the inmate's confinement." Washington v. Harper, 494 U.S. 210, 222 (1990). "[G]iven the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interests." Id. at 227. In the context of involuntary medication, the court considers three of the factors used to determine the reasonableness of a prison policy particularly relevant: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest;" (2) the impact on the guards and other inmates when the asserted constitutional right is accommodated; and (3) "the absence of ready alternatives." United States v. Loughner, 672 F.3d 731, 745 (9th Cir. 2012) (internal quotation marks omitted) (quoting Harper, 494 U.S. at 224-25).

Plaintiff has alleged that he was willing to take oral medications, thus he has established a readily available and less extreme alternative. Accordingly, the court finds that such allegations

are sufficient at the screening stage to state a claim against Dr. Jane Doe for violation of plaintiff's rights under the Fourteenth Amendment.

The use of Does in pleading practice is generally disfavored—but it is not prohibited. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999); Lopes v. Viera, 543 F.Supp.2d 1149, 1152 (E.D. Cal. 2008). However, plaintiff is advised that the court cannot order service of a Doe defendant because the United States Marshal cannot serve a Doe defendant.

Therefore, plaintiff will be required to identify him or her with enough information to locate the defendant for service of process. The United States Marshal cannot initiate service of process on unknown defendants. Plaintiff will have an opportunity through discovery to identify the unknown (Doe) defendants. Crowley v. Bannister, 734 F.3d 967, 978 (9th Cir. 2013) (quoting Gillespie, 629 F.2d at 642). Once the identity of a Doe defendant is ascertained, plaintiff must file a motion to amend his complaint only to identify the identified Doe defendant so that service by the United States Marshal can be attempted. However, the court will recommend that any Doe defendant plaintiff fails to identify during the course of discovery be dismissed from this action.

**2. Substantive Due Process**

Although the Supreme Court has not set out the minimum procedural safeguards necessary for involuntary medication, the court has found procedures to be adequate when a prisoner is provided with "notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses." Harper, 494 U.S. at 235 (citing Vitek v. Jones, 445 U.S. 480, 494-96 (1980)). As in the original complaint, the amended complaint does not contain any facts indicating whether or not a hearing was held before plaintiff was medicated. Therefore, the court finds that the complaint fails to state a claim for violation of plaintiff's substantive due process rights.

////

////

////

**AMENDING THE COMPLAINT**

As set forth above, the complaint contains several cognizable claims, but fails to state a claim for inadequate mental health treatment. Thus, plaintiff will be given the option to proceed with his cognizable claims or file an amended complaint.

Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant. The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema

////

N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, all prior pleadings are superseded. Any amended complaint should contain all of the allegations related to his claim in this action. If plaintiff wishes to pursue his claims against the defendant, they must be set forth in the amended complaint.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

**CONCLUSION**

1. Plaintiff's complaint states a potentially cognizable deliberate indifference claim against defendants Dayson, Houston, and Vallar, a conditions of confinement claim against defendants Dr. Siegel, Rodgers, Hurley, and Lozano, and a Fourteenth Amendment claim against Dr. Jane Doe as set forth in Section III above. The complaint does not state any additional claims. Accordingly, plaintiff will have the option of proceeding with the complaint as screened or filing an amended complaint.
2. Within thirty (30) days of the date of this order, plaintiff shall fill out and return the attached form indicating how he would like to proceed in this action.
3. Plaintiff is warned that his failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: February 16, 2021

DB:12
DB:1/Orders/Prisoner/Civil.Rights/frat0354.scrn2

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN FRATUS,

Plaintiff,

v.

DAYSON, et al.,

Defendants.

No. 2:20-cv-0354 DB P

PLAINTIFF'S NOTICE ON HOW TO PROCEED

Check one:

_____ Plaintiff wants to proceed immediately on his Eighth Amendment claims against defendants Dayson, Houston, and Vallar, and his Fourteenth Amendment Claim against Dr. Jane Doe. Plaintiff understands that by going forward without amending the complaint he is voluntarily dismissing his deliberate indifference claim against defendants Dr. Siegel, Rodgers, Hurley, and Lozano.

_____ Plaintiff wants to amend the complaint.

DATED:______________________

______________________

John Fratus
Plaintiff pro se