1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    JOHN FRATUS,                              No.  2:20-cv-000354 TLN SCR P

11                    Plaintiff,

12          v.                                  FINDINGS AND RECOMMENDATIONS

13    DAYSON, et al.,

14                    Defendants.

15

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

17    U.S.C. § 1983.  Presently before the court is defendants Lozano's and Hurley's motion for

18    summary judgment. (ECF No. 119.)  For the reasons described below, the undersigned

19    recommends that defendants' motion be denied.

20                              **PROCEDURAL HISTORY**

21          The case is proceeding on plaintiff's first amended complaint ("FAC") filed October 26,

22    2020.  (ECF No. 1.)  On screening, the previously assigned magistrate judge found plaintiff stated

23    a cognizable Eighth Amendment medical indifference claim against defendants Dayson, Vallar,

24    and Houston, and a cognizable Eighth Amendment conditions of confinement claim against

25    defendants Siegel, Rodgers, Hurley, and Lozano.  (ECF No. 18.)  Plaintiff later voluntarily

26    dismissed defendants Siegel and Rodgers.  (ECF No. 53.)  Defendants Dayson, Vallar, and

27    Houston have answered the FAC (see ECF Nos. 83, 92) but do not move for summary judgment

28    here.

                                            1

The FAC states that on July 22, 2016, plaintiff was transferred from California State Prison-Sacramento to the California Medical Facility ("CMF") due to a mental health crisis and several suicide attempts.[1]  (ECF No. 1 at 4, ¶¶14-16.)  He remained in the CMF until August 29, 2016.  During that time, plaintiff was held in a small empty cell for 24 hours a day with no out-of-cell therapy, treatment, or exercise yard.  He was pulled out of his cell once a week in handcuffs for approximately ten minutes to talk to his case manager Dr. Siegel and his treatment team.  Plaintiff alleges that was the extent of the treatment he received.  (Id., ¶18.)  Plaintiff alleges that CMF Warden Lozano and Associate Warden Hurley are liable for implementing and following the 24-hour segregation policy.  (Id. at 7, ¶32.)

Plaintiff was readmitted to the CMF on or around July 16, 2018, and remained through about August 31, 2018.  (ECF No. 1 at 16, ¶¶80-81.)  During this period Plaintiff was denied out-of-cell exercise yard.  (Id., ¶82.)  Plaintiff alleges defendant Hurley admitted denying yard access the first level response to plaintiff's 602 grievance dated September 20, 2018.  (Id., ¶83.)  He further alleges that defendant Lozano also admitted denying yard access in the second level response dated November 11, 2018.  (Id., ¶84.)  Plaintiff alleges the policy denying exercise was "implemented and/or allowed" by defendants Hurley and Lozano and seeks an unspecified amount of compensatory and punitive damages.  (Id. at 23, ¶108.)

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    Defendant's Motion**

Defendants Lozano and Hurley move for summary judgment on grounds they did not deny plaintiff yard time during the two periods he was at CMF.  (ECF No. 119-1 at 5-7.)  They argue that during plaintiff's first admission in 2016, neither Lozano nor Hurley had the authority to provide yard time because plaintiff's housing unit was operated by a separate government entity.  (Id. at 5-6.)  Second, during plaintiff's admission in 2018, defendants claim they were in the process of changing the procedures to allow inmates yard access but plaintiff moved to a different unit before those procedures went into effect.  (Id. at 6-7.)

---

[1]  For brevity, the undersigned omits allegations pertaining to plaintiff's Eighth Amendment medical indifference claims against defendants Dayson, Vallar, and Houston.

2

1    Plaintiff opposes defendant's motion, arguing that Lozano and Hurley "had the

2   responsibility of custody and care of all inmates housed at their prison" and were aware of the

3   "illegal policies for not allowing max[imum] custody inmates out of cell for exercise from 2016

4   to 2018[.]"  (ECF No. 124 at 7.)  Plaintiff's verified opposition includes three exhibits: (1) his

5   own declaration ("Fratus Decl.") (ECF No. 124 at 5-10); (2) Plaintiff's Response to Defendants'

6   Statement of Undisputed Facts ("Plaintiff's Response") (ECF No. 124 at 11-21); and (3)

7   Plaintiff's Undisputed Facts (ECF No. 124 at 22-24).  Defendants did not file a reply brief.

8        **II.    Statement of Facts**

9    Plaintiff was briefly housed at CMF in 2016 and again in 2018.  (Defendants' Statement

10  of Undisputed Fact ("SUF") 1, ECF No. 119-2 at 1.)  Plaintiff was classified as a maximum

11  custody inmate each time.  (SUF 2.)

12   When plaintiff was transferred to CMF on or around July 22, 2016, he was placed under

13  the care of the Department of State Hospitals (DSH) in a housing unit known as CMF-DSH.

14  (SUF 3.)  When maximum custody inmates are released to the yard at CMF, they must each be

15  placed in their own large individual outdoor module where they may not have direct contact with

16  other people.  This is for the safety of both staff and inmates.  (SUF 2.)  But because CMF-DSH

17  unit does not have any outdoor modules for the use of inmates in maximum custody, maximum

18  custody inmates such as plaintiff in CMF-DSH were not provided with yard time.  (SUF 4.)

19   Defendants state that at the time of plaintiff's admission in 2016, the CMF-DSH unit was

20  controlled by DSH, not the California Department of Corrections and Rehabilitation ("CDCR").

21  CDCR employees, such as defendants Hurley and Lozano, had no control over yard activity or

22  authority to provide inmates in CMF-DSH with yard time.  (SUF 4.)  While plaintiff

23  acknowledges receiving care from DSH during his admission in 2016, he disputes that the

24  defendants had no control or authority over CMF-DSH.  (See Plaintiff's Opposition, ECF No.

25  124 at 14-15.)  The parties agree that plaintiff transferred to another prison on or around August

26  29, 2016. (SUF 3.)

27   In June 2018, the Psychiatric Inpatient Program (PIP) was established at CMF.  Inmates in

28  this program were housed in the CMF-PIP unit, which replaced the CMF-DSH and was located in

1   the same place.  However, inmates in CMF-PIP were now under the care of CDCR rather than

2   DSH.  (SUF 5.)  Plaintiff was again transferred to CMF on or around July 22, 2018, and was

3   placed in CMF-PIP. Because this unit still did not have outdoor modules for the use of maximum

4   custody inmates during yard time, plaintiff could not be provided access to the yard while he

5   remained in the CMF-PIP.  (SUF 6.)

6        Because there were no modules for the use of maximum custody inmates at CMF-PIP,

7   defendants Hurley and Lozano initiated a process of finding means of providing yard time to

8   inmates in the CMF-PIP.  CMF instituted a new procedure permitting maximum custody inmates

9   in the CMF-PIP to use the modules located in the administrative segregation unit when they were

10  not in use by those inmates.  (SUF 7.)  Plaintiff does not dispute the creation and implementation

11  of the new procedure but argues the impetus for the change was his grievance dated August 26,

12  2018.  (ECF No. 124 at 16.)

13       Defendants state that allowing max custody inmates in the CMF-PIP to use the modules

14  located in the administrative segregation was not an ideal solution because there are theoretically

15  not enough modules to accommodate all of the inmates in both the CMF-PIP and administrative

16  segregation.  However, enough inmates regularly decline offers of yard time so that there are

17  enough modules to accommodate the inmates who do want yard time.  (SUF 7.)  After ensuring

18  that this new practice could be safely implemented and proceeding through the process of

19  creating new written procedure, this new procedure was instituted in November 2018.  By that

20  time, plaintiff had already been transferred to a different unit where yard time was available.

21  (SUF 8.)

22       **III.    Legal Standards**

23           **A.  Summary Judgment**

24       Summary judgment is appropriate when it is demonstrated that there "is no genuine

25  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

26  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

27  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

28  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

1  moving party may accomplish this by "citing to particular parts of materials in the record,

2  including depositions, documents, electronically stored information, affidavits or declarations,

3  stipulations (including those made for purposes of the motion only), admissions, interrogatory

4  answers, or other materials" or by showing that such materials "do not establish the absence or

5  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

6  support the fact." Fed. R. Civ. P. 56(c)(1).

7         "Where the non-moving party bears the burden of proof at trial, the moving party need

8  only prove that there is an absence of evidence to support the non-moving party's case." Oracle

9  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

10  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

11  motion, against a party who fails to make a showing sufficient to establish the existence of an

12  element essential to that party's case, and on which that party will bear the burden of proof at

13  trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

14  of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such

15  a circumstance, summary judgment should "be granted so long as whatever is before the district

16  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

17  56(c), is satisfied." Id.

18         If the moving party meets its initial responsibility, the burden then shifts to the opposing

19  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

20  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

21  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

22  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

23  admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

24  Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a

25  fact "that might affect the outcome of the suit under the governing law," and that the dispute is

26  genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

27  party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

28         In the endeavor to establish the existence of a factual dispute, the opposing party need not

1   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

2   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

3   trial."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir.

4   1987).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the

5   proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587

6   (quoting Adv. Comm. Note to 1963 Amendments to Fed. R. Civ. P. 56(e)).

7           In resolving the summary judgment motion, the evidence of the opposing party is to be

8   believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the

9   facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475

10  U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

11  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

12  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

13  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

14  simply show that there is some metaphysical doubt as to the material facts....  Where the record

15  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

16  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

17                          **B.  Eighth Amendment Outdoor Exercise Claim**

18          The Eighth Amendment's prohibition against cruel and unusual punishment protects

19  prisoners not only from inhumane methods of punishment but also from inhumane methods of

20  confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v.

21  Brennan, 511 U.S. 825, 847 (1994)).  "An Eighth Amendment claim that a prison official has

22  deprived inmates of humane conditions of confinement must meet two requirements, one

23  objective and one subjective."  Norbert v. City & Cnty. of San Francisco, 10 F.4th 918, 927 (9th

24  Cir. 2021) (quoting Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994)).  Under the objective

25  requirement, the inmate must demonstrate "conditions posing a substantial risk of serious harm"

26  that present "an excessive risk to [his] health or safety."  Norbert, 10 F.4th at 928 (quoting

27  Farmer, 511 U.S. at 834).  "The subjective requirement, relating to the defendant's state of mind,

28  requires deliberate indifference."  Id. (quoting Allen, 48 F.3d at 1087).

                                                    6

The Ninth Circuit has recognized that "exercise is 'one of the basic human necessities protected by the Eighth Amendment.'" Norbert, 10 F.4th at 928–29 (quoting May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)).  In determining whether a deprivation of outdoor exercise is sufficiently serious, the court must consider the circumstances, nature, and duration of the deprivation.  Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979).  "[O]rdinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment purposes.  Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010) (quoting LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir.1993)).

### IV.    Discussion

#### A.  CMF-DSH Housing: July 22, 2016, to August 29, 2016

Defendants acknowledge that "maximum custody inmates like [plaintiff] were not provided with yard time" at the time of plaintiff's stint at CMF-DSH in 2016.  (ECF No. 119-1 at 6.)  However, defendants argue that they had no authority to provide plaintiff or any other inmates with yard time because the CMF-DSH unit was controlled by DSH.  (Id.; Declaration of Lozano ("Lozano Decl.") ¶ 5, ECF No. 119-3 at 2.)  Because they had no personal involvement in the alleged constitutional violation, defendants claim they are entitled to summary judgement.  (Id.)  Indeed, § 1983 requires that there be an actual connection or link between the actions of the defendants and the constitutional deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  Therefore, the undersigned finds that defendants have met their initial burden.

The burden then shifts to plaintiff to establish a genuine issue regarding defendants' personal involvement in the alleged rights deprivation.  Plaintiff admits he was "placed into DSH for mental health treatment" but contends CDCR retained authority within the CMF-DSH.  (Plaintiff's Response, ECF No. 124 at 13.)  For example, plaintiff claims that he was still able to file CDCR 602 grievances and receive CDCR 115 Rules Violation Reports while in CMF-DSH.  (Id. at 15.)  Plaintiff adds that if he "experienced a medical problem he would be taken to the CMF infirmary and be seen by CDCR CMF staff."  (Id.)

7

1    Drawing all reasonable inferences in plaintiff's favor, the court finds that plaintiff has

2    submitted minimally sufficient evidence to create a genuine issue regarding defendants' authority

3    over CMF-DSH at the time of his admission in 2016.  At the very least, plaintiff's evidence

4    suggests that there was not as clear a line of control between CDCR and DSH regarding CMF-

5    DSH operations as defendants suggest.  (See Lozano Decl. ¶5, ECF No. 119-3 at 2 ("Because the

6    CMF-DSH unit was controlled by DSH, it was DSH that controlled yard activity").)  Defendant

7    Lozano's testimony may ultimately carry more weight than whatever objective evidence of actual

8    CDCR control plaintiff might muster, but at this stage the court's role is "not to weigh the

9    evidence and determine the truth of the matter but to determine whether there is a genuine issue

10   for trial."  See Tolan v. Cotton, 572 U.S. 650, 656 (2014) (quoting Anderson, 477 U.S. at 249)

11   (per curiam).  Because the issue of defendants' control is material to the § 1983 analysis, the

12   undersigned recommends that defendants' motion for summary as to the events at CMF-DSH in

13   2016 be denied.

14            **B.  CMF Housing: July 16, 2018, to August 31, 2018**

15   Defendants argue that the evidence establishes that they were not deliberately indifferent

16   to plaintiff's Eighth Amendment right to yard time during his 2018 admission to the CMF-PIP.

17   (ECF No. 119-1 at 6-7.)  The Eighth Amendment deliberate indifference inquiry is a two-step

18   process.  First, the inmate must show that the prison officials were aware of a "substantial risk of

19   serious harm" to an inmate's health or safety.  Farmer, 511 U.S. at 837.  Second, the inmate must

20   show that the prison officials had no "reasonable" justification for the deprivation, in spite of that

21   risk.  See id. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or

22   safety may be found free from liability if they responded reasonably").

23   The court finds that defendants have again met their initial burden.  The evidence shows

24   that after the creation of the CMF-PIP in June 2018, the unit still did not have outdoor modules

25   for maximum custody inmates to use during yard time.  (Lozano Decl. ¶7, ECF No. 119-3 at 2.)

26   Because constructing new modules was not feasible, defendants developed new procedures to

27   permit maximum custody inmates in the CMF-PIP to access unused outdoor modules in the

28   administrative segregation unit.  (See id., Exhs. A and B, ECF No. 119-3 at 4-8.)  Although

8

1    plaintiff had left the CMF-PIP by the time the new procedures went into place, the undersigned

2    finds that defendants' efforts to create new procedures supports that they were not deliberately

3    indifferent to the lack of yard access available to plaintiff and other maximum custody inmates.

4        The burden again shifts to plaintiff to establish a genuine issue regarding defendants'

5    deliberate indifference.  Plaintiff argues that defendants were long aware of the unconstitutional

6    denial of yard access to maximum custody inmates but only created the new procedures in

7    response to the grievance he filed on August 28, 2018.[2]  (See Plaintiff's Opposition, ECF No. 124

8    at 2-3; Fratus Decl. ¶11, ECF No. 124 at 8-9.)  Plaintiff alleges that defendant Hurley granted his

9    first level grievance on September 20, 2018, and amended Operating Procedure #63 to allow

10   CMF-PIP inmates to use outdoor modules in the administrative segregation unit every

11   Wednesday.  (Fratus Decl., ¶11, ECF No. 124 at 8-9.)  Dissatisfied with one day of yard access

12   per week, plaintiff appealed.  (Id. at ¶12, ECF No. 124 at 9.)  Defendant Lozano granted

13   plaintiff's appeal and stated in the second level response dated November 11, 2018, that new

14   procedures were being developed to permit CMF-PIP inmates to access outdoor modules in the

15   administrative segregation unit on Wednesdays, Saturdays, and Sundays.  (Id. ¶ 13, ECF No. 124

16   at 9-10.)

17       The court finds that plaintiff has raised a genuine issue as to the reasonableness of

18   defendants' response to his lack of yard access.  The court agrees with defendants that their

19   efforts to create new procedures provide some indication that they were not deliberately

20   indifferent.  But defendants offer no evidence on when they began developing the new procedures

21   or how long the process took to ensure their safe implementation.  (See Lozano Decl. ¶8, ECF

22   No. 119-1 at 2-3.)  If defendants started in June 2018 when the CMF-PIP was created and the

23   implementation process took several months, then a reasonable trier of fact could find reasonable

24   justification for depriving plaintiff of yard access during that period.  But if they did not start the

25   _____

26   [2]  Plaintiff did not enter the grievances documents in the record as required by Federal Rule of
     Civil Procedure 56(c)(1)(A).  See Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P.
     56(c)(1)(A) ("Materials that are not yet in the record — including materials referred to in an
27   affidavit or declaration — must be placed in the record.").  The court will still consider plaintiff's
     testimony regarding the grievances because of his pro se status and the fact that he laid out his
28   testimony in a sworn declaration based on his personal knowledge.

1  process until receiving plaintiff's grievance in late August 2018, as plaintiff alleges, then a

2  reasonable trier of fact could conclude that they acted with unreasonable delay and denied

3  plaintiff's yard access without justification.

4      Further, defendants briefly reference that prison officials do not act with deliberate

5  indifference when they deny exercise in response to a particularized security risk. (ECF No. 119-

6  1 at 5.) They cite LeMaire, 12 F.3d at 1458, where the Ninth Circuit determined prison officials

7  did not violate the Eighth Amendment by denying a violent prisoner out-of-cell exercise for five

8  years. (Id.) However, defendants do not offer evidence of any specific security concerns with

9  plaintiff other than referencing his "maximum custody" status (SUF 2) and admission for "mental

10  health reasons" (SUF 3). Plaintiff disputes that his isolation was related to security at all; he

11  claims that he was housed at CMF-DSH in 2015 as a maximum custody inmate and was still

12  allowed to go to group yard and play basketball with other inmates. (Fratus Decl. ¶¶1-2, ECF No.

13  124 at 5.) Plaintiff, therefore, has also raised genuine issues of fact regarding the existence of

14  security risks that may have reasonably justified defendants' denial of yard access.

15      In sum, because plaintiff has raised genuine issues regarding defendants' deliberate

16  indifference, the undersigned recommends that defendants' motion for summary as to the events

17  at CMF-PIP in 2018 be denied.

18              **C.  Qualified Immunity**

19      "In § 1983 actions, qualified immunity protects government officials from liability for

20  civil damages insofar as their conduct does not violate clearly established statutory or

21  constitutional rights of which a reasonable person would have known." Sampson v. County of

22  Los Angeles, 974 F.3d 1012, 1018 (9th Cir. 2020) (citations and internal quotation marks

23  omitted). In resolving questions of qualified immunity at summary judgment, courts engage in a

24  two-pronged inquiry. The first asks whether the facts, viewed in the light most favorable to the

25  plaintiff, demonstrate that the officials violated a constitutional right. The second asks whether

26  that right was "clearly established" at the time of the alleged constitutional violation. Peck v.

27  Montoya, 51 F.4th 877, 887 (9th Cir. 2022) (citing Tolan, 572 U.S. at 655-56). The right's

28  contours "must be so well defined that it is clear to a reasonable officer that his conduct was

10

1    unlawful in the situation he confronted." Id. (citing City of Tahlequah v. Bond, 595 U.S. 9, 12

2    (2021)).

3    The crux of defendants' qualified immunity arguments is that they acted reasonably under

4    the circumstances.  Defendants agree that the "general principle is well established that prison

5    officials may not deprive prisoners long-term of regular outdoor exercise," but argue that here:

6    there is no case law clearly establishing the right of a maximum custody inmate to have
     outdoor exercise when he is assigned to a unit without modules for the use of outdoor
7    exercise and the defendants are in the process of implementing new procedures which will
     provide him with the opportunity to use the modules in a different unit for outdoor
8    exercise.

9    (ECF No. 119-1 at 8-9.)  While framed as an issue of case law, defendants' arguments rest on

10   factual disputes regarding the reasonableness of their actions.  To grant qualified immunity to

11   defendants on this framing, the undersigned would first have to accept that defendants acted

12   reasonably, i.e., without deliberate indifference, in implementing new yard procedures.  But here,

13   as discussed above, plaintiff has raised a genuine issue as to the reasonableness of defendants'

14   actions.  Under either prong of the qualified immunity analysis, "courts may not resolve genuine

15   disputes of fact in favor of the party seeking summary judgment."  Tolan, 572 U.S. at 656.

16   In other words, the material factual dispute that precludes summary judgment as to the

17   reasonableness of defendants' actions also precludes summary judgment on defendants' claim of

18   qualified immunity.  See LaLonde v. County of Riverside, 204 F.3d 947, 953 (9th Cir.

19   2000) ("The determination of whether a reasonable officer could have believed his conduct was

20   lawful is a determination of law that can be decided on summary judgment only if the material

21   facts are undisputed"); Heilman v. Thumser, No. 2:11-cv-1907-MCE-EFB, 2014 WL 6886016, at

22   *10 (E.D. Cal. Dec. 4, 2014), report and recommendation adopted, No. 2:11-cv-1907-MCE-EFB,

23   2015 WL 367461 (E.D. Cal. Jan. 27, 2015) (denying qualified immunity on an Eighth

24   Amendment outdoor exercise claim where defendants' argument "rests on their dispute of

25   plaintiff's factual claims, not the status of the law as to the conduct alleged").  Accordingly, the

26   undersigned finds that defendants are not entitled to qualified immunity on the current record.

27   ////

28   ////

**CONCLUSION**

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 119) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 27, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

12